IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| KAHYAN HARRIS, JR., | : | |
|     Plaintiff, | : | |
| | : | |
| v. | : | CIVIL ACTION NO. 23-CV-4372 |
| | : | |
| LEBRON, | : | |
|     Defendant. | : | |

<u>MEMORANDUM</u>

**SCHMEHL, J. /s/JLS**                                                                          **SEPTEMBER 19, 2024**

       Kahyan Harris, Jr., an inmate currently confined at SCI Greene, filed a *pro se* Complaint in November 2023, asserting civil rights violations based on an excessive force incident.[1] Harris named as Defendants Correctional Officer Lebron and Correctional Officer Page. For the reasons set forth below, this matter will be dismissed with prejudice for failure to prosecute.

**I.    FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY**[2]

       The events that underlie Harris's claims are alleged to have occurred on July 23, 2023, when he was confined at SCI Chester. (Compl. at 5.) In the Complaint, Harris claims that he was taken from the yard to the search area by C.O. Page and C.O. Lebron. (*Id.*) Once there, he was put on the body scanner and was cleared, such that no contraband was seen in his body. (*Id.*) Harris then complied with C.O. Page's instruction to remove his clothing for a strip search. (*Id.*) He asserts that, as he stood naked, C.O. Lebron stated that "security was told that [he] had

---

[1] Although he did not indicate in the Complaint the status of his detention, the publicly available state court docket, of which this Court may take judicial notice, reflects that Harris was a convicted and sentenced prisoner at the time he filed the Complaint. *See Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006); *Commonwealth v. Harris*, CP-51-CR-0015135-2009 (C.P. Phila).

[2] The factual allegations set forth in this Memorandum are taken from Harris's Complaint (ECF No. 2). The Court adopts the sequential pagination assigned by the CM/ECF docketing system.

contraband." (*Id.*)  Harris ignored C.O. Lebron's comment, who then "started getting upset and saying that he going to catch my ass and make sure I stay in the hole until my next court date." (*Id.*)  At the same time, C.O. Page directed Harris to open his mouth and lift his tongue, which Harris did. (*Id.*)  C.O. Page repeated this instruction, and Harris complied. (*Id.*)  According to Harris, C.O. Lebron stated to C.O. Page that he was "tired of putting up with this dude," reached into Harris's mouth, put Harris into a headlock, and began to choke Harris by cutting off his air supply. (*Id.* at 5, 7.)  As alleged, Harris was thrown to the ground and felt a sharp pain on the left side of his ribs and back. (*Id.* at 7.)  He had difficulty breathing. (*Id.*)

Harris asserts that he reported the event to Captain Bacco when he took Harris to the medical department. (*Id.*)  Harris also reported the incident to Nurse McKenna, who submitted a request for an x-ray study to be performed. (*Id.*)

After Harris was treated in the medical unit by Nurse McKenna, he was brought to a dry cell and placed in handcuffs. (*Id.*)  His handcuffed hands were placed in a cuff bag and his legs were cuffed as well. (*Id.*)  Harris was told that he had to defecate three times so that he could be checked again for contraband. (*Id.*)  He stayed in the dry cell for approximately forty-eight hours and was cleared from having contraband, was put on the body scanner again, and was cleared again. (*Id.*)  Harris alleges that while in the dry cell, he complained of his injuries. (*Id.*)

As a result of the alleged incident, Harris suffered a hairline fracture of his ribs, breathing problems, and back pain. (*Id.* at 5.)  He seeks monetary damages. (*Id.*)

In a December 29, 2023 Memorandum and Order, the Court granted Harris *in forma pauperis status* and screened the Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B).  (ECF Nos. 6, 7.)  The Court determined that Harris could proceed on his excessive force claim against C.O.

Lebron, but that he failed to allege a plausible basis for a claim against C.O. Page.[3] (*Id.*) Harris was given thirty-days leave to amend his Complaint to address the claims that were dismissed. He was instructed that if he did not timely file an amended complaint, the Court would direct service of his initial Complaint on C.O. Lebron only. (*See* ECF No. 7.) When the deadline passed and Harris had not filed an amended complaint, on February 21, 2024, the Court directed the Clerk of Court to serve a written waiver request on Defendant Lebron, which later was returned executed. (ECF Nos. 9, 10, 14.)

On April 22, 2024, Defendant Lebron filed a Motion to Dismiss Plaintiff's Complaint pursuant to Fed. R. Civ. P. 12(b)(6) (ECF No. 16) (the "Motion"). Defendant Lebron argued that the Complaint should be dismissed because Harris failed to fully exhaust administrative remedies prior to filing this lawsuit, as required by the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), in accordance with DC-ADM 804, the grievance policy of the Pennsylvania Department of Corrections. (*Id.* at 6-10 (citing *Small v. Camden Cnty.*, 728 F.3d 265, 269-70 (3d Cir. 2013).) Specifically, Defendant Lebron contends that DC-ADM 804 establishes a three-tier administrative review, and while Harris filed Grievance No. 1045213 on July 31, 2023, it was rejected due to failure to comply with procedural requirements, and he took no further action on it. (*Id.* at 7-8.) Additionally, Defendant Lebron argues that the grievance contained a fatal defect in that it did not request monetary relief, as required by DC-ADM 804. (*Id.* at 9-10 (citing *Shorter v. Sorber*, No. 22-5089, 2024 WL 1442163, at *3 (E.D. Pa. Apr. 3, 2024).)[4]

---

[3] The Court also determined that to the extent he sought to present claims based on time that he spent in a dry cell after the excessive force incident, Harris had failed to allege a plausible claim against a named Defendant. (*See* ECF No. 6.)

[4] C.O. Lebron attached to the Motion, *inter alia*, the grievance filed by Harris which instructs the filer to "***State all relief that you are seeking.***" and which reflects that the relief requested by Harris was to "press charges." (*See* ECF No. 16-1 at 3.) "[W]here a defendant moves to dismiss

By Order dated April 22, 2024, Harris was directed to file a response to the Motion by May 22, 2024. (ECF No. 17.) On May 23, 2024, Harris filed a Petition for Extension of Time to File Brief/Petition. (ECF No. 19.) By Order dated May 31, 2024, the Court granted the request and directed Harris to file a response to the Motion by June 25, 2024.[5] (ECF No. 20.) When Harris failed to timely file a response, the Court issued an Order to Show Cause on July 24, 2024, directing Harris to explain why this case should not be dismissed for failure to prosecute and directing Harris to file a response to Defendant Lebron's Motion if he intended to prosecute his remaining claim. (*See* ECF No. 23.) Harris has not responded to that Order either, and his time to do so has now expired. For the reasons set forth below, Harris's claims against C.O. Lebron will be dismissed with prejudice.

## II.   STANDARD OF REVIEW

Given Harris's failure to respond to the Court's Orders, the Court will consider whether it is appropriate to dismiss this case for failure to prosecute. Federal Rule of Civil Procedure 41(b) allows for the dismissal of an action when a plaintiff fails to prosecute the case, fails to comply

---

based on a failure-to-exhaust defense and the exhaustion issue turns on indisputably authentic documents related to the inmate's grievances, [a court] may consider those documents without converting a motion to dismiss to a motion for summary judgment." *Rinaldi v. United States*, 904 F.3d 257 261 n.1 (3d Cir. 2018) (internal quotations and alterations omitted); *Spruill v. Gillis*, 372 F.3d 218, 223 (3d Cir. 2004) ("Given that the exhaustion issue turns on the indisputably authentic documents related to Spruill's grievances, we hold that we may also consider these without converting it to a motion for summary judgment."); *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002) ("In appropriate cases, failure to exhaust may be raised as the basis for a motion to dismiss."); *see, e.g., Walker v. Little*, No. 22-3451, 2023 WL 2570562, at *1 (3d Cir. Mar. 20, 2023) (affirming grant of motion to dismiss based on failure to exhaust administrative remedies).

[5] To assist with his preparation of a response to the Motion, the Court also directed the Clerk of Court to re-send to Harris copies of the December 29, 2023 Memorandum and Order (ECF Nos. 6 and 7), the February 21, 2024 Order (ECF No. 9), C.O. Lebron's Motion to Dismiss, as well as a copy of the docket for this case. (*See* ECF No. 20.)

4

with the rules of procedure, or fails to comply with a court order.  *See* Fed. R. Civ. P. 41(b).  "A District Court has the authority to dismiss a suit *sua sponte* for failure to prosecute by virtue of its inherent powers and pursuant to Federal Rule of Civil Procedure 41(b)."  *See Sebrell ex rel. Sebrell v. Philadelphia Police Dep't*, 159 F. App'x 371, 373 (3d Cir. 2005) (*per curiam*) (citing *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962)).  Ordinarily, a court determining whether to *sua sponte* dismiss a case because of a plaintiff's failure to prosecute must consider several factors as set forth in *Poulis v. State Farm Fire and Cas. Co.*, 747 F.2d 863 (3d Cir. 1984).  *See, e.g., Spain v. Gallegos*, 26 F.3d 439, 454-55 (3d Cir. 1994).  However, an analysis under *Poulis* usually is not required when a plaintiff willfully abandons the case or makes adjudication impossible.  *See Dickens v. Danberg*, 700 F. App'x 116, 118 (3d Cir. 2017) (*per curiam*) ("Where a plaintiff's conduct clearly indicates that he willfully intends to abandon the case, or where the plaintiff's behavior is so contumacious as to make adjudication of the case impossible, a balancing of the *Poulis* factors is not necessary."); *Baker v. Accounts Receivables Mgmt., Inc.*, 292 F.R.D. 171, 175 (D.N.J. 2013) ("[T]he Court need not engage in an analysis of the six *Poulis* factors in cases where a party willfully abandons her case or otherwise makes adjudication of the matter impossible." (citing cases)).

However, in the context of a pending motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), granting a defendant's motion to dismiss a case where the plaintiff has failed to respond thereto is effectively akin to sanctioning the plaintiff for failing to comply with a local rule or court order, and a "drastic" sanction like dismissal with prejudice requires a *Poulis* analysis.  *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 29-30 (3d Cir. 1991).  A court cannot grant a Rule 12 motion as "unopposed" or "uncontested" without a *Poulis* analysis.  *See, e.g., Washington v. Wenerowicz*, No. 21-2741, 2022 WL 39870, at *2 n.5 (3d Cir. Jan. 5, 2022) (*per curiam*); *Adkins*

*v. Reynolds*, 788 F. App'x 824, 828 (3d Cir. 2019) (*per curiam*); *Wiggins v. MacManiman*, 698 F. App'x 42, 43-44 (3d Cir. 2017) (*per curiam*); *Jones v. Unemployment Comp. Bd. of Rev.*, 381 F. App'x 187, 189 (3d Cir. 2010) (*per curiam*); *Shuey v. Schwab*, 350 F. App'x 630, 632-33 (3d Cir. 2009); *Hernandez v. Palakovich*, 293 F. App'x 890, 895-96 (3d Cir. 2008).  That is so even if, as here, the plaintiff has been ordered to respond and warned that failure to respond could result in dismissal.  *Brzozowski v. Pennsylvania Tpk. Comm'n*, 738 F. App'x 731, 734 (3d Cir. 2018) (*per curiam*) (remanding where "[t]he District Court did not acknowledge the Poulis factors.  Instead, in dismissing Brzozowski's amended complaint, the District Court merely noted that: (1) it directed Brzozowski to respond to the Commission defendants' motion; (2) it warned him that failure to respond might result in dismissal; and (3) Brzozowski nevertheless failed to respond.").  Thus, the Court will consider the *Poulis* factors to determine whether it is appropriate to dismiss Harris's case for failure to prosecute.

### III. DISCUSSION

In *Poulis*, the United States Court of Appeals for the Third Circuit articulated six factors to consider when determining whether to dismiss an action due to a plaintiff's failure to prosecute:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary . . . ; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

747 F.2d at 868 (emphasis omitted).  When balancing the *Poulis* factors, there is no "magic formula," "no single *Poulis* factor is dispositive," and all six factors need not be satisfied for a court to dismiss a complaint.  *See Briscoe v. Klause*, 538 F.3d 252, 263 (3d Cir. 2008).  In this case, an assessment of the *Poulis* factors weighs in favor of dismissing this action.

As to the first *Poulis* factor, the extent of the party's personal responsibility, it is Harris's sole responsibility to prosecute his case and comply with Court orders. *See id.* at 258-59 (explaining that "a pro se plaintiff is personally responsible for complying with the court's orders" and "it is logical to hold a pro se plaintiff personally responsible for delays in his case because a pro se plaintiff is solely responsible for the progress of his case"); *Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (where litigant was proceeding *pro se*, any failure to comply with orders was attributable to him). Harris was given three opportunities to file a response to C.O. Lebron's Motion – the first when the Motion initially was filed and he was directed to respond, the second when Harris requested an extension of time that was granted, and the third when the Order to Show cause was issued. (*See* ECF Nos. 17, 20, 23.) Harris was expressly informed that if he failed to respond to the Court's Order to Show Cause and file a response, this case would be dismissed for failure to prosecute. (*See* ECF No. 23.) Nonetheless, Harris failed to file a response to the Motion and did not communicate with the Court in any other respect. Harris, as a self-represented litigant, is solely responsible for complying with the Court's orders. This factor, therefore, weighs in favor of dismissal.

The second factor, prejudice to the defendants, is neutral here. "Examples of prejudice include 'the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party.'" *Adams v. Trustees of New Jersey Brewery Employees' Pension Tr. Fund*, 29 F.3d 863, 874 (3d Cir. 1994) (quoting *Scarborough v. Eubanks*, 747 F.2d 871 (3d Cir. 1984). Since this case is in its early stage of litigation, there appears to be no prejudice to Defendant Lebron at this point. However, as a practical matter, it is unclear how Lebron could be expected to defend against a case with an unresponsive plaintiff if the case were to move forward.

The third factor, a history of dilatoriness, must be assessed over the lifetime of the case, keeping in mind that "conduct that occurs one or two times is insufficient." *Briscoe*, 538 F.3d at 261.  However, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as . . . consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874.  On the one hand, this case is in the early stages of litigation.  On the other hand, the litigation cannot proceed beyond its initial stage due to Harris's repeated failure to comply with the Court's Orders to file his response.  The delay is solely attributable to Harris and nothing in the record provides a reasonable explanation as to why he is unable to comply with the Court's directives.  For example, there is no indication on the docket that Harris failed to receive the Court's Orders directing him to file his response.  Indeed, Harris requested an extension of time, which was granted.[6]  (*See* ECF Nos. 19, 20.)  Further, a search of the Pennsylvania Department of Corrections Inmate/Parolee Locator reflects that Harris is still incarcerated at SCI Greene, consistent with his address on the docket.  Because the record shows unexplained delays in Harris's prosecution of the case, this factor weighs in favor of dismissal.

The fourth factor, whether plaintiff's conduct was willful or in bad faith, weighs in favor of dismissal.  As noted above, Harris has been expressly and repeatedly instructed on what he was required to do to prosecute this case, namely respond to the pending Motion, and also has been expressly informed of the consequences of the failure to comply with the Court's Orders.  The Court's most recent Order (ECF No. 23) made clear that if Harris failed to comply with the

---

[6] Harris's request for an extension of time to file his response to the Motion was entered on the docket on May 23, 2024.  (*See* ECF No. 19.)  Therein, Harris requested a ninety-day extension.  While the Court did not grant an extension of that length, more than ninety days has passed since the request and Harris has failed to file anything else with the Court.

8

Order, his case could be dismissed.  On this record, Harris's failure to file a response may fairly be understood as willful.

An examination of the fifth factor, the effectiveness of sanctions other than dismissal, reveals that no other sanction would be effective.  Harris is proceeding *pro se* and his apparent refusal to respond to the pending Motion, if left unaddressed, would be a complete barrier to this case proceeding beyond the pleadings stage.  Given the procedural posture of this case, Harris's *pro se* and *in forma pauperis* status, and Harris's apparent unwillingness to prosecute his claims by responding to the pending Motion, it is difficult to determine what lesser sanction might be available or appropriate in this context.  See *Adonai-Adoni v. King*, 506 F. App'x 116, 119 (3d Cir. 2012) (*per curiam*) ("Because Adonai-Adoni proceeded *pro se* and *in forma pauperis*, monetary sanctions were not a viable form of alternative sanction."); *Guyer v. Beard*, 907 F.2d 1424, 1430 (3d Cir. 1990) (affirming dismissal of case where dilatory conduct "made adjudication of the case impossible.  Therefore, any lesser sanction would not have furthered the interests of justice."); *King v. Galano*, No. 14-1691, 2015 WL 6523459, at *3 (D.N.J. Oct. 28, 2015) ("Plaintiff's history of nonparticipation and noncompliance in this matter suggests that alternative sanctions would be futile.").  As such, no other sanction would be effective.  The fifth factor thus weighs in favor of dismissal.

Under the sixth *Poulis* factor, the Court must consider if the claims or defenses are meritorious.  *See Poulis*, 747 F.2d at 869-70 ("A claim or defense, will be deemed meritorious when the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense.").  Here, C.O. Lebron argues in his Motion that Harris failed to fully exhaust administrative remedies prior to filing this lawsuit, as required by the PLRA and in accordance with DC-ADM 804.  (*See* ECF No. 16 at 6-10.)  C.O. Lebron asserts

9

that while Harris filed Grievance No. 1045213, he took no further action on it after it was rejected and that Harris failed to request monetary relief as required by DC-ADM 804.  (*Id.* at 7-10 (quoting DC-ADM 804 at § 1(A)(11)(d), "[i]f the inmate desires compensation or other legal relief normally available from a court, the inmate must request the specific relief sought in his/her initial grievance").); *see also Johnson v. Wireman*, 809 F. App'x 97, 99 (3d Cir. 2020) (explaining that DC-ADM 804 requires an inmate who wants compensation to request it in the initial grievance and a plaintiff who requested "whatever relief may be available under law" did not properly exhaust his claim for money damages); *Camacho v. Beers*, No. 16-1644, 2018 WL 6618410, at *2-3 (W.D. Pa. Dec. 18, 2018) (finding plaintiff's statement in initial grievance "asking for relief as allowed by law" did not "request the specific relief of monetary compensation"); *Nyhuis v. Reno*, 204 F.3d 65, 73 (3d Cir. 2000) ("[I]t is beyond the power of this court—or any other—to excuse compliance with the exhaustion requirement, whether on the ground of futility, inadequacy or any other basis.").

      As in *Poulis*, the defense proffered in C.O. Lebron's Motion is compelling, Harris has made no allegation that would avoid this defense, and Harris filed no answer to the motion to dismiss.  *See Poulis*, 747 F.2d at 870 (explaining that the proffered defense was "on its face, compelling," where plaintiffs made no allegation in the complaint that would avoid the defense and did not respond to the motion to dismiss, and concluding that "[w]hile we express no opinion on whether summary judgment or dismissal would have been warranted on this ground, the existence of a prima facie defense is a factor to be weighed along with the foregoing factors.") (internal citations omitted); *see also Pozoic v. Cumberland County Prison*, 2012 WL 114127 (M.D. Pa. 2012) (in analyzing the sixth *Poulis* factor, the court stated that it could not find that the complaint would be successful on the merits because the plaintiff failed to exhaust

administrative remedies before bringing his claim and dismissed the complaint pursuant to Rule 41(b) (citing *Smith v. Pa. Dep't of Corr.*, 2011 WL 4573364 (W.D. Pa. 2011)). Thus, even if Harris could maintain a meritorious excessive force claim against C.O. Lebron, C.O. Lebron has articulated a compelling defense to Harris's claim, which weighs in favor of dismissal. Even if the Court were to find the sixth *Poulis* factor to be neutral at this stage of the litigation, the first, third, fourth, and fifth *Poulis* factors weigh in favor of dismissal.

A plaintiff may have a meritorious claim, but he must prosecute that claim in accordance with the Federal Rules of Civil Procedure and this Court's orders to prove that claim and entitle him to judgment, if warranted. Absent a plaintiff who is participating in the legal process, this case cannot move forward.

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that the *Poulis* factors weigh in favor of dismissing this action pursuant to Federal Rule of Civil Procedure 41(b) for Harris's failure to prosecute. Simply put, there is no way for this litigation to proceed without Harris's participation. An appropriate order will be filed separately, dismissing the case against the only remaining defendant, C.O. Lebron.

                                      **BY THE COURT:**

                                      **/s/ Jeffrey L. Schmehl**
                                      **JEFFREY L. SCHMEHL, J.**